# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
February 22, 2012

Lyle W. Cayce
Clerk

No. 10-20600

In re: ECKSTEIN MARINE SERVICE L.L.C.,

_____

In Re: In the Matter of the Complaint of Eckstein Marine Service L.L.C. now known as Marquette Transportation Company Gulf-Inland L.L.C. as owner/operator of the M/V St. Andrew for Exoneration from or Limitation of Liability;

ECKSTEIN MARINE SERVICE L.L.C., now known as Marquette Transportation Company Gulf-Inland L.L.C.; MARQUETTE TRANSPORTATION COMPANY GULF-INLAND L.L.C.,

Plaintiffs – Appellants

v.

LORNE JACKSON,

Claimant – Appellee

_____

Appeal from the United States District Court
for the Southern District of Texas

_____

Before JONES, Chief Judge, and HIGGINBOTHAM and SOUTHWICK, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

No. 10-20600

Plaintiff-appellant Marquette Transportation Company Gulf-Inland LLC challenges the district court's dismissal of its limitation action as untimely. Finding no error, we affirm.

I.

Claimant-appellee Lorne Jackson was a crew member of the M/V St. Andrew, a 65-foot tug owned and operated by appellant Marquette.[1] While on deck on February 28, 2009, Jackson became entangled in a line and was pulled into a mooring bit, seriously injuring his left leg at the femur, fibula, tibia, knee and ankle, including fractures, soft tissue damage and ligament injuries. Jackson was immediately transported to a hospital and remained there for the next two weeks.

On April 28, 2009 Jackson served Marquette with a Texas state court complaint alleging the February 28 accident was caused by the unseaworthiness of the M/V St. Andrew and by the negligence of Marquette and its employees.[2] Jackson claimed his injuries permanently and substantially impaired him and requested damages including past loss of earnings, future loss of earning capacity, past and future disability, past and future disfigurement, past and future medical and hospital expenses, past and future pain and mental anguish, and maintenance and care. The petition alleged the amount sought was in excess of jurisdictional amounts but did not specify a sum. Marquette filed an answer on June 10.

Following discovery, Jackson made a settlement demand for $3 million on December 2. Marquette refused. On January 18, 2010 Marquette filed an action for exoneration from or limitation of liability in federal district court to cap its liability at $750,000, the value of the M/V St. Andrew and its pending freight at

---

[1] Marquette was formerly known as Eckstein Marine Service, LLC.

[2] The original petition was filed in Harris County, Texas on March 17, 2009. Both parties agree that Jackson was a Jones Act Seaman at the time of the accident.

No. 10-20600

the time of the accident. Jackson responded with a motion to dismiss, which the district court denied without prejudice. In July, Jackson renewed his motion, and the district court granted it.[3] In the state court trial that followed, Jackson won a judgment in excess of $750,000. Marquette filed this appeal.

## II.

We review *de novo* a district court's ruling on a motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1).[4] The party asserting jurisdiction carries the burden of proof.[5] Whether a limitation action was timely filed is a determination we also review *de novo*.[6] "If, in making its timeliness-ruling, the district court makes findings of fact, they are reviewed *only* for clear error."[7]

## III.

The Limitation of Shipowners' Liability Act allows a vessel owner to limit its liability in certain actions for damages to the value of the vessel (and pending freight) on which the incident giving rise to the litigation occurred.[8] To obtain this statutory protection, the owner must "bring a civil action in a district court...within 6 months after a claimant gives the owner written notice of a

---

[3] *In re Eckstein Marine Serv., LLC*, No. H-10-0156, 2010 WL 3303640 (S.D. Tex. Aug. 19).

[4] *Martin v. PepsiAmericas, Inc.*, 628 F.3d 738, 740 (5th Cir. 2010); *see also E.A.S.T., Inc. of Stamford, Conn. v. M/V Alaia*, 876 F.2d 1168, 1171 (5th Cir.), *reh'g denied*, 881 F.2d 1071 (1989) (noting that the standard of review is the same in admiralty cases).

[5] *Budget Prepay, Inc. v. AT&T Corp.*, 605 F.3d 273, 278 (5th Cir. 2010) (citing *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001)).

[6] *Billiot v. Dolphin Servs., Inc.*, 225 F.3d 515, 517 (5th Cir. 2000).

[7] *Id.* (emphasis in original).

[8] 46 U.S.C. § 30501, *et seq*.

No. 10-20600

claim."[9]  If the action is not filed within that six-month period, it is dismissed as untimely.[10]  The district court found that Marquette received written notice of Jackson's claim when it was served with his state court complaint on April 28, 2009.  Because Marquette did not file its limitation of liability action until January 18, 2010 – eight and a half months later – it failed to meet the statute's timeliness requirement.  The district court therefore dismissed Marquette's complaint for lack of subject matter jurisdiction.

A.

Marquette first challenges the district court's treatment of Jackson's motion to dismiss as an attack on subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1).  His argument is two-fold: (1) timeliness is not a jurisdictional issue, and (2) Marquette did not have notice that Jackson was disputing the court's jurisdiction.

This circuit, like several other courts, has held that a party alleging a limitation petition was not timely filed challenges the district court's subject matter jurisdiction over that petition.[11]  Marquette contends we are not bound to follow this precedent because filing deadlines are never jurisdictional.  This is simply inaccurate.  While many statutory filing deadlines are not

---

[9] *Id.* at § 30511(a).

[10] *Exxon Shipping Co. v. Cailleteau*, 869 F.2d 843, 846 (5th Cir. 1989).

[11] *Complaint of Tom-Mac, Inc.*, 76 F.3d 678, 682 (5th Cir. 1996) ("In their motion to dismiss, Claimants asserted that Tom-Mac's limitation of liability action was not timely filed, thus challenging the district court's jurisdiction to hear Tom-Mac's petition."); *see also Cincinnati Gas & Elec. Co. v. Abel*, 533 F.2d 1001, 1003 (6th Cir. 1976) (citing *The Maine*, 28 F.Supp. 578, 582 (D. Md. 1939), *aff'd sub nom. Standard Wholesale P. & A. Works v. Travelers Ins. Co.*, 107 F.2d 373 (4th Cir. 1939)); *In re Waterfront License Corp.*, 231 F.R.D. 693, 696–700 (S.D. Fla. 2005).

No. 10-20600

jurisdictional, we have long recognized that some are.[12] The Limitation Act's six-month filing requirement is one of these.

That the district court has original jurisdiction over admiralty claims does not change this.[13]  Under 28 U.S.C. § 1333(1), a plaintiff may elect to bring admiralty and maritime claims in state rather than federal court.[14]  These "cannot be removed in the absence of diversity"[15] unless "there exists some basis for jurisdiction other than admiralty."[16]  Jackson chose to file his complaint in state court.  The district court's admiralty jurisdiction therefore could not, in and of itself, give the district court subject matter jurisdiction over any part of the litigation.  Only Marquette's complaint under the Limitation Act was properly

---

[12] *See, e.g.*, *In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*, 646 F.3d 185, 189 (5th Cir. 2011) ("The FTCA's statute of limitations is jurisdictional, and a claimant is required to meet both filing deadlines") (internal citations omitted); *Khan v. Gonzales*, 223 Fed. Appx. 417, at *1 (5th Cir. 2007) ("The 30-day filing deadline [for review of a final order of removal] is jurisdictional.") (citing *Navarro-Miranda v. Ashcroft*, 330 F.3d 672, 676 (5th Cir. 2003)); *Anderson v. Parsons State Hosp. & Training Ctr.*, 180 Fed. Appx. 514, 515 (5th Cir. 2006) ("A timely notice of appeal is necessary for this court to exercise jurisdiction."). Although the Supreme Court has recently concluded that many filing deadlines are probably not jurisdictional, it has not explicitly or implicitly rejected this Circuit's prior conclusion that the Limitation Act's six-month filing deadline is a jurisdictional requirement. *See Bowles v. Russell*, 551 U.S. 205 (2007) (concluding that statutory time limits are jurisdictional in the context of appeals); *Henderson ex rel. Henderson v. Shinseki*, 131 S. Ct. 1197, 1203 (2011) (noting that *Bowles* "did not hold categorically that every deadline for seeking judicial review in civil litigation is jurisdictional.").

[13] *See* U.S. Const. art. III, § 2 cl. 1 ("The judicial power [of the United States] shall extend...to all cases of admiralty and maritime jurisdiction").

[14] 28 U.S.C. § 1333(1) ("The district courts shall have original jurisdiction, exclusive of the courts of the States, of...[a]ny civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled."); *see also Baris v. Sulpicio Lines, Inc.*, 932 F.2d 1540, 1542–43 (5th Cir. 1991) (discussing the "savings to suitors" clause of § 1333(1)).

[15] *Baris*, 932 F.2d at 1543.

[16] *Poirrier v. Nicklos Drilling Co.*, 648 F.2d 1063, 1066 (5th Cir. 1981) (citing 14 Wright, Miller & Cooper, Fed. Prac. & Proc. § 3674 (1976)).

5

No. 10-20600

before the district court, which required Marquette to follow the Act's mandatory filing deadline.[17]

Finally, Jackson's pleadings gave adequate notice to Marquette that he was mounting a challenge to the district court's jurisdiction based on the untimely filing of Marquette's limitation action, even though they did not actually cite to Fed. R. Civ. P. 12(b)(1). The motion's primary argument for dismissal was that Marquette had missed the six-month filing deadline. The first paragraph of Jackson's renewed motion to dismiss declared that "[t]he six-month time limit is jurisdictional and this matter is time-barred." Jackson also made the jurisdictional argument explicit in his answer to the limitation complaint. The original answer stated that "Claimant admits the admiralty and maritime jurisdiction of this Honorable Court, but denies the Petitioner's right to claim limitation or exoneration from liability in this case." Following a hearing on his motion, however, Jackson obtained leave to amend his answer. The only change in the amended version was to this paragraph, which now read: "Claimant denies the admiralty and maritime jurisdiction of this Honorable Court because this limitations action was not filed within six months from the time limitation plaintiff received notice of claim."

Because a challenge to the timeliness of a limitation action is a challenge to the district court's subject matter jurisdiction and because Marquette had notice Jackson was mounting such a challenge in his motion to dismiss, the

---

[17] *See The Deep Sea Tankers, Ltd. v. The Long Branch*, 258 F.2d 757, 772 (2d Cir. 1958) ("The law is well settled that a petition to limit liability pursuant to 46 U.S.C. § 185 [now codified at § 30511] is valid and effective only if it is filed within six months after the shipowner receives written notice of claim."); *Standard Wholesale P. & A. Works*, 107 F.2d at 376 ("The statute clearly and expressly requires as a condition to the filing of the petition that it must be filed 'within six months'" after receipt of a written notice of claim).

No. 10-20600

district court did not err by construing Jackson's motion as a Rule 12(b)(1) jurisdictional attack.[18]

## B.

Marquette next argues that the district court erred by dismissing its limitation action because the complaint was filed before the six-month deadline expired. Under the Limitation Act, the six-month deadline begins to run only when the "claimant gives the owner written notice of a claim."[19] The district court found Marquette received such notice when Jackson delivered his state court petition on April 28, 2009 and did not file its limitation action until January 18, 2010, more than eight months later. Marquette maintains that Jackson's December 2 letter demanding a $3 million settlement payment was the first communication it received revealing a reasonable possibility that Jackson's claim would exceed $750,000. Because it filed its limitation petition only six weeks later, Marquette argues, it did not breach the Limitation Act's timeliness requirement.

The Limitation Act's six-month timeline does not automatically begin to run when a vessel owner learns a claimant has filed a lawsuit. It is triggered only if and when the written notice reveals a "reasonable possibility" that the claim will exceed the value of the vessel, and therefore that the vessel owner might benefit from the Limitation Act's protection.[20] The rationale behind this was explained by the Second Circuit in *Complaint of Morania Barge No. 190,*

---

[18] Marquette raises an alternative argument that resolving this matter under Rule 12(b)(1) was improper because Jackson's jurisdictional attack was intertwined with the merits of the claim. We disagree. The district court, in finding that the allegations made in Jackson's state court complaint alerted Marquette to a reasonable possibility that his claims could exceed $750,000, was merely evaluating the kinds of allegations made by Jackson at that initial stage of the litigation. This did not require the district court to reach any conclusions regarding whether Jackson's claims would or should succeed on their merits.

[19] 46 U.S.C. § 30511(a).

[20] *Tom-Mac*, 76 F.3d at 683; *Billiot*, 225 F.3d at 517.

No. 10-20600

*Inc.*, the first circuit court decision to adopt the "reasonable possibility" test, which noted that a vessel owner would otherwise be obligated "to go to the expense of posting security and taking the other steps necessary to commence a limitation proceeding when the claimant's specific representations demonstrate that such a proceeding will be wholly unnecessary."[21]  Whether a written notice reveals a "reasonable possibility" that a claim will exceed the value of the vessel requires the court to engage in a fact-intensive inquiry into the circumstances of the case.[22]

Jackson's state court complaint established a reasonable possibility that his claim might exceed $750,000, the value of the M/V St. Andrew.  In his complaint, he alleged that his injuries occurred on the M/V St. Andrew, that Marquette was liable for those injuries due to its negligence, and that he was seeking economic and non-economic damages.  This put Marquette on notice that it would have to defend itself against a claim that might fall under the Limitation Act.[23]  The complaint also detailed injuries Jackson claimed were permanent and catastrophic.  He alleged he "sustained serious and debilitating injuries when he was struck by a mooring line," causing him to "suffer[] serious and disabling injuries of a permanent nature."  The complaint did not limit the damages sought to a specific amount.  Instead it listed damages for which Jackson claimed he would require compensation for the remainder of his lifetime, including past loss of earning, future loss of earning capacity, past and future disability, past and future disfigurement, past and future medical and hospital expenses, past and future pain and mental anguish, and maintenance and care.

---

[21] *Complaint of Morania Barge No. 190, Inc.*, 690 F.2d 32, 34 (2d Cir. 1982).

[22] *Billiot*, 225 F.3d at 518.

[23] *See Tom-Mac*, 76 F.3d at 683.

No. 10-20600

Marquette complains the complaint never indicated a dollar amount sought, and that it was filed before the full extent and permanence of Jackson's injuries were definitively known. This argument fails to recognize that the claimant need *only* raise a "reasonable possibility" that the damages sought will exceed the value of the vessel. While this standard is not toothless, it is also not particularly stringent. Once a reasonable possibility has been raised, it becomes the vessel owner's responsibility to initiate a prompt investigation and determine whether to file a limitation action.[24] The Limitation Act provides generous statutory protection to the vessel owners who reap all of its benefits.[25] When there is uncertainty as to whether a claim will exceed the vessel's value, the reasonable possibility standard places the risk and the burdens associated with that risk on the owner. In other words, if "doubt exists as to the total amount of the claims or as to whether they will exceed the value of the ship the owner will not be excused from satisfying the statutory time bar since he may institute a limitation proceeding even when the total amount claimed is uncertain."[26]

If anything, Marquette's investigation into the incident after it received Jackson's complaint should have demonstrated that there was more than a reasonable possibility that Jackson's claim might exceed $750,000. Marquette

---

[24] *Exxon Shipping Co.*, 869 F.2d at 846 ("The purpose of the six-month prescription on the limitation of liability petition is to require the shipowner to act promptly to gain the benefit of the statutory right to limit liability.") (citing *In re Goulandris*, 140 F.2d 780, 781 (2d Cir.), *cert. denied*, 322 U.S. 755 (1944)); *In re Morania*, 690 F.2d at 33–34.

[25] *See Esta Later Charters, Inc. v. Ignacio*, 875 F.2d 234, 239 (9th Cir. 1989) (noting that the Limitation Act "provides shipowners a generous measure of protection not available to any other enterprise in our society.").

[26] *In re Morania*, 690 F.2d at 34; *see also Petition of Southern SS Co.*, 132 F.Supp. 316, 319 (D.C. Del. 1955) ("Because...the statute is in derogation of the common law and abridges the rights of a claimant to a full recovery of his damages, it is not to be constru[ed] to interfere with the rights of claimants to a greater extent than is necessary to fully and adequately effectuate the purpose of the Act.").

has monitored Jackson's medical condition since the accident as part of its cure obligation. During his initial two-week hospitalization, Jackson underwent multiple surgeries including debridement, the insertion of hardware to treat his bone fractures, and a skin graft. Doctors determined at that time that injuries to his leg, ligaments and soft tissue were extensive, and that his knee was "globally unstable." An eyewitness at the scene of the accident recalled that Jackson's "foot was hanging off of his leg at a 90 – a 90 degree angle. It was just hanging off....It had blood everywhere."[27] In response to written discovery requests, Jackson indicated he was awaiting further surgery, and that he "cannot walk." Jackson's professional experience was in physical labor-based jobs, and in October 2009 an appraisal put his lost past and future earning capacity at $258,753 and his past and future lost household services at $27,864, for a total of $286,617 on these damages elements alone. Marquette protests that its legal research indicated the highest general jury verdict for injuries similar to Jackson's in Harris County in the last decade was $335,000. While this finding might have made it less probable that Jackson's claim would exceed $750,000, in light of the other evidence available to Marquette it did not make the possibility of such an award unreasonable.

The two Fifth Circuit cases and the Second Circuit case relied on by both parties in this litigation are not to the contrary.[28] Taken together, they establish

---

[27] Marquette notes that this testimony was from a deckhand who was not employed by Marquette, and whose deposition was not taken until April 2010. While the testimony itself was unavailable to Marquette before the six-month deadline expired, it demonstrates the graphic, open and obvious nature of the injury that an investigation would have uncovered.

[28] *See Billiot*, 225 F.3d 515 (holding the six-month deadline was not triggered by a claim that misidentified the vessel on which the incident occurred); *Tom-Mac*, 76 F.3d 678 (holding the six-month deadline was triggered by a claim identifying one of several vessels involved in the accident and alleging the owner was liable for two crew members' deaths, even though it did not allege a specific amount of damages); *Morania Barge*, 690 F.2d 32 (holding the six-month deadline was not triggered where the claimant specifically alleged $366,563.94 in damages and the vessel was valued at $478,093.75).

that a claimant need not prove or even specifically allege that his damages will exceed the value of the vessel in order to trigger the six month deadline. So long as the reasonable possibility standard has been met by the claimant's allegations, the vessel owner bears the risk even if the total value of the claim is uncertain. On the other hand, the owner is entitled to rely on a claimant's specific allegation that the claim will not exceed the vessel's value.[29] This court summarized this standard in *Exxon Shipping Co.* as follows:

> It is an established principle that a petition for limitation of liability cannot be sustained where the amount claimed is concededly less than the value of the vessel. Where the vessel owner, however, receives notice of a claim for less than the value of the vessel, yet he is also aware that other claims likely to be the subject of litigation arising out of the same occurrence may exceed the value of his ship, he must then file his petition within six months of receiving notice of any claim, no matter how small, or otherwise be barred from asserting limitation of liability.[30]

Jackson was under no obligation to specify an amount claimed in his initial state court complaint, and never asserted that the damages he sought were less than $750,000. Because his complaint alleging catastrophic and permanent injuries raised at least a reasonable possibility that his claim might exceed the value of the M/V St. Andrew, it was Marquette's responsibility to conduct an investigation, and to file a limitation action within six months if it wanted to avail itself of that statute's generous protection. The district court did not err in concluding that the six-month deadline was triggered when Jackson

---

[29] *See, e.g.*, *In re Morania*, 690 F.2d at 35 ("Morania was entitled to rely upon [the claimant's] sworn representations and since the claims were substantially less than the value of the Barge and its pending freight...Morania was not required by 46 U.S.C. § 185 [now recodified as 46 U.S.C. § 30511] to file a complaint for exoneration from or limitation of liability until [the claimant] thereafter amended its complaint.").

[30] 869 F.2d at 846 n.3 (internal quotation marks and citations omitted).

No. 10-20600

delivered his complaint to Marquette on April 28, 2009, and that Marquette's January 18, 2010 petition was untimely filed.

C.

In its final challenge to the district court's judgment, Marquette contends it was deprived of an opportunity to be heard because the court failed to hold an evidentiary hearing on Jackson's motion to dismiss.

We review a district court's denial of an evidentiary hearing for abuse of discretion.[31] When considering Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, the district court must give the plaintiff an opportunity to be heard, particularly when disputed factual issues are important to the motion's outcome.[32] In some cases, an oral hearing may be indispensable due to the complicated factual disputes underlying the case.[33] Contrary to Marquette's suggestion, however, an oral hearing is not always necessary if the parties receive an adequate opportunity to conduct discovery and otherwise present their arguments and evidence to the court.[34]

In this case, Marquette had notice that Jackson was challenging the district court's jurisdiction on the basis that its limitation petition was not filed in a timely manner. Both Marquette and Jackson conducted several months of discovery before Jackson renewed his motion to dismiss, and both made multiple filings in the district court presenting their arguments regarding the petition's timeliness as well as the evidence they had accumulated in support of those arguments. Under these circumstances, Marquette had notice and an

---

[31] *Moran v. Kingdom of Saudi Arabia*, 27 F.3d 169, 172–73 (5th Cir. 1994).

[32] *See Martin v. Morgan Drive Away, Inc.*, 665 F.2d 598, 602 n.1 (5th Cir 1982); *Williamson v. Tucker*, 645 F.2d 404, 414 (5th Cir. 1981).

[33] *Williamson*, 645 F.2d at 414.

[34] *Id.* at 413; *Moran*, 27 F.3d at 173.

No. 10-20600

opportunity to be heard. Because Marquette does not give us any reason to believe that it was unable to adequately present its evidence in writing or that it would have been able to make different or more persuasive arguments at an oral hearing, we conclude that the district court did not abuse its discretion when it opted not to hold such a hearing.

## IV.

The judgment of the district court is AFFIRMED.