# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 16-30269

United States Court of Appeals
Fifth Circuit

**FILED**

December 23, 2016

Lyle W. Cayce
Clerk

ENABLE MISSISSIPPI RIVER TRANSMISSION, L.L.C.,

> Plaintiff - Appellant

v.

NADEL & GUSSMAN, L.L.C.; NADEL & GUSSMAN RUSTON, L.L.C.,

> Defendants - Appellees

Appeal from the United States District Court
for the Western District of Louisiana

Before STEWART, Chief Judge, and SMITH and DENNIS, Circuit Judges.
CARL E. STEWART, Chief Judge:

Plaintiff-Appellant Enable Mississippi River Transmission, LLC ("Enable"), which operates a federally regulated natural gas storage facility, sued, alleging that a natural gas well operated by Defendants-Appellees Nadel & Gussman, LLC and Nadel & Gussman Ruston, LLC (collectively "Nadel") was producing gas from this storage facility. The district court dismissed for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). After appealing, Enable filed a motion to disqualify opposing counsel. We AFFIRM the dismissal and DENY, as moot, the motion to disqualify.

## I. FACTUAL AND PROCEDURAL HISTORY

Enable owns the West Unionville Gas Storage Facility ("West Unionville") in Lincoln Parish, Louisiana. Nadel operates the Sanderlin No. 1

No. 16-30269

Well, which produces natural gas from the Vaughn Sand geological formation near West Unionville.

West Unionville is owned and operated by Enable pursuant to a Certificate of Public Convenience and Necessity issued by the Federal Energy Regulatory Commission ("FERC") as authorized by the Natural Gas Act ("NGA").[1]  West Unionville is part of Enable's interstate natural gas pipeline system.  Enable transports gas and injects it underground, where it can be withdrawn and shipped through its pipelines as needed.  In a gas storage facility some of the gas injected underground is non-effective, which means that it cannot be withdrawn through normal means.  The present suit arose when Enable discovered that West Unionville had an unusually large amount of non-effective gas.

Enable conducted a study and concluded that the gas was leaking from West Unionville through a passageway in the geologic formation.  After examining the publicly available production data of nearby natural gas wells, Enable found a correlation between the times it was injecting natural gas into its storage facility and increased production at those wells.  Enable alleges in these proceedings that Nadel's Sanderlin No. 1 Well is producing gas from West Unionville.

Enable brought this suit against Nadel in federal district court, seeking a declaratory judgment pursuant to 28 U.S.C. § 2201 to determine the ownership of the natural gas in West Unionville.  Additionally, Enable sought an accounting of the gas produced from the Sanderlin No. 1 Well, disgorgement of the profits enjoyed by Nadel for producing storage gas, an injunction requiring Nadel to plug the Sanderlin No. 1 well and any other wells producing storage gas, and attorney's fees.

---

[1] 15 U.S.C. §§ 717 *et seq.*

2

No. 16-30269

Nadel moved to dismiss for lack of subject matter jurisdiction and failure to state a claim under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), respectively. After concluding that Enable was in essence asserting a state law conversion claim, the district court granted Nadel's motion to dismiss for lack of subject matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). In so doing, the district court relied on a decision by the Ninth Circuit that presented similar facts. *See Williston Basin Interstate Pipeline Co. v. An Exclusive Gas Storage Leasehold & Easement in the Cloverly Subterranean Geological Formation*, 524 F.3d 1090 (9th Cir. 2008). The district court found that Nadel was not subject to regulation by the NGA and that federal jurisdiction would interfere with the federal-state regulatory balance that Congress established between the transportation and sale of natural gas and the production of natural gas. Enable appealed.

While this case was pending on appeal, Enable filed a motion to disqualify Nadel's counsel on grounds that Enable, under its previous name, was represented when forming West Unionville in 1968 by current and former members of the same law firm that now represents Nadel.

## II. ANALYSIS

### 1. Subject Matter Jurisdiction

This court "review[s] *de novo* a district court's ruling on a motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1)." *In re Eckstein Marine Serv., LLC*, 672 F.3d 310, 314 (5th Cir. 2012). "The party asserting jurisdiction carries the burden of proof." *Id.* "A court can find that subject matter jurisdiction is lacking based on '(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts.'" *Ballew v. Continental Airlines, Inc.*, 668 F.3d 777, 781 (5th

3

No. 16-30269

Cir. 2012) (quoting *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001)).

Enable claims that this court has original jurisdiction to hear this case under 28 U.S.C. § 1331 as well as under 15 U.S.C § 717u.[2] Federal courts have jurisdiction in "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Additionally, the NGA provides that federal courts "shall have exclusive jurisdiction of violations of this chapter or the rules, regulations, and orders thereunder, and of all suits in equity and actions at law brought to enforce any liability or duty created by, or to enjoin any violation of, this chapter or any rule, regulation, or order thereunder." 15 U.S.C. § 717u. Although section 717u is not expressly limited to cases arising under the NGA, this limitation is implied. *Pan Am. Petroleum Corp. v. Superior Court of Del.*, 366 U.S. 656, 665 n.2 (1961).

There are two types of cases that fit this "arising under" standard: "cause[s] of action created by federal law" and state law claims that "turn on substantial questions of federal law." *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005). For a state law claim to support federal subject matter jurisdiction, a federal issue must be "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn v. Minton*, 133 S. Ct. 1059, 1065 (2013).

*a. Federal Question Jurisdiction*

Enable admits that there is no federal cause of action but avers that there are substantial questions of federal law implicated by its state law claim.

---

[2] Enable filed for a declaratory judgment. *See* 28 U.S.C. § 2201(a). Although the Declaratory Judgment Act "enlarged the range of remedies available in the federal courts," it "did not extend their jurisdiction." *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671 (1950).

No. 16-30269

Specifically, Enable asserts that the court must decide (1) the nature and ownership of any gas leaving West Unionville; (2) whether the production exception applies to Nadel when it withdraws gas from West Unionville; and (3) whether Nadel has violated the NGA by withdrawing, transporting, and selling storage gas in interstate commerce.

Although Enable pled no specific state law claim, the district court determined that Enable was essentially pursuing a conversion claim against Nadel for producing gas owned by Enable. The Louisiana Civil Code does not provide for a common law conversion action, "[h]owever, causes of action for conversion have been inferred from the Codal articles providing that the right of ownership, possession, and enjoyment of movables are protected by actions for the recovery of the movables themselves, actions for restitution of their value, and actions for damages."[3] *Dual Drilling Co. v. Mills Equip. Invs., Inc.*, 721 So. 2d 853, 856 (La. 1998). We agree with the district court that this is a proper characterization of Enable's claim.

To establish a civilian conversion claim under Louisiana law, Enable must demonstrate an act of dominion or control that is wrongfully asserted over its moveable property. *See id.* at 857; 12 William E. Crawford, *Louisiana Civil Law Treatise* § 12:13 (2d ed. 2016). Therefore, we must determine whether the right of ownership, possession, and enjoyment of the storage gas implicates a federal question that is necessary, substantial, and disputed. *See Gunn*, 133 S.Ct. at 1065. Enable argues that this determination of ownership cannot be made without interpretation of the NGA. We disagree.

---

[3] There are three possible actions under Louisiana civil law: a "revendicatory action for the recovery of a moveable transferred" if the defendant is still in possession; an unjust enrichment action; and a delictual action, which is the closest to common law conversion, but it requires fault rather than imposing strict liability. *Dual Drilling Co. v. Mills Equip. Invs., Inc.*, 721 So. 2d 853, 856–57 (La. 1998).

5

No. 16-30269

The NGA and its associated regulations govern the operation of Enable's storage facility and the possessory interest in the gas as between Enable and its customers. Enable acquired a certificate of public convenience and necessity to operate West Unionville. *See* 15 U.S.C. § 717f(c) (providing that a natural gas company needs a certificate of convenience and necessity to operate facilities). This certificate does not address Enable's property rights in the storage gas; it merely authorizes the operation of West Unionville. *See id.* Enable also filed a tariff with FERC that details "all rates and charges for any [interstate] transportation or sale . . . and the classifications, practices, and regulations affecting such rates and charges." *Id.* § 717c(c). Enable's tariff states that it controls and possesses the gas at all times "while [the gas] is in [Enable's] facilities between the receipt point(s) and delivery point(s)." However, these rules of possession apply only "[a]s between Customer and [Enable]." On their face, the tariff's rules of possessory interest do not extend beyond the customers to others who may interfere with the storage gas.

Enable's storage facility is also subject to state regulation. States are empowered "to regulate the physical production and gathering of natural gas in the interests of conservation or of any other consideration of legitimate local concern." *Interstate Nat. Gas Co. v. Fed. Power Comm'n*, 331 U.S. 682, 690 (1947); *see also Fed. Power Comm'n v. Panhandle E. Pipe Line Co.*, 337 U.S. 498, 509–13 (1949) (stating that the federal power granted under the NGA "was to complement that of the state regulatory bodies"); 15 U.S.C. § 717(b). Louisiana has its own permitting requirements for underground storage facilities that must be met before the facility can be used. La. Rev. Stat. § 30:22(B)(1–3). In authorizing West Unionville, the commissioner is empowered to deem all natural gas in the facility that "has previously been reduced to possession and which is subsequently injected into [the] underground storage reservoir" to be "deemed the property of the injector." *Id.*

6

§ 30:22(E). The statute further states "in no event shall such gas . . . be subject to the right of the owner of the surface of the lands." *Id.* Enable has an order to that effect from the commissioner for West Unionville. As it is clear that Louisiana law defines the property interest in the storage gas as between Enable and Nadel, issues of federal law are not necessary to the resolution of this case.

The Ninth Circuit reached the same conclusion in a nearly identical suit. *See Williston*, 524 F.3d at 1092–94, 1102. The plaintiff in *Williston* operated an underground natural gas storage reservoir that it claimed was losing natural gas to a nearby production well. *Id.* at 1093. The plaintiff brought state law claims for conversion and negligence against the owner of the well.[4] *Id.* The court held that "no provision of the NGA constitutes an essential element of [the conversion and negligence] claims," and thus there was no federal jurisdiction. *Id.* at 1102. We agree with the reasoning of the Ninth Circuit. Because no element of a Louisiana civilian conversion claim requires the resolution of a federal law issue, there is no federal question jurisdiction over this suit.

It is of no moment that Enable accuses Nadel of producing gas traveling in interstate commerce, which Enable contends places Nadel outside of the NGA's production exception. The NGA excludes from federal regulation "the production or gathering of natural gas." 15 U.S.C. § 717(b). An error by Nadel in its production activities does not automatically place it outside of this production exception. "[P]roducers are subject to the jurisdiction of the FERC when they engage in activities that can be classified as sales or transportation rather than as production or gathering." *Shell Oil Co. v. Fed. Energy*

---

[4] The plaintiffs also brought a condemnation action to take over the well as permitted by the NGA, but that claim is not relevant to this case. *Williston*, 524 F.3d at 1093; 15 U.S.C. § 717f(h).

*Regulatory Comm'n*, 566 F.2d 536, 539 (5th Cir. 1978).   "'Production' of gas (means) the act of bringing gas from the earth, and 'gathering' (means) the act of collecting gas after it has been brought forth."  *Id.* (quoting *Panhandle E. Pipe Line Co.*, 337 U.S. at 518 (Black, J., dissenting)) (alterations in original). Erroneously drawing storage gas from the ground is still a part of physical production, and we decline to reclassify it as the interstate sale or transportation of natural gas.

We also conclude that the federal issues Enable's tort claim raises are not substantial.  The NGA applies to the transportation or sale of natural gas in interstate or foreign commerce, but not to retail sales or "the production or gathering of natural gas."  15 U.S.C. §717(b); *see also Oneok, Inc. v. Learjet, Inc.*, 135 S. Ct. 1591, 1595–96 (2015).   Regulation of the production and gathering of natural gas is left to the states.  *Oneok*, 135 S. Ct. at 1596.  The core subject of this suit is state-regulated production by Nadel, so "there is no 'serious federal interest in claiming the advantages thought to be inherent in a federal forum.'"  *Gunn*, 133 S. Ct. at 1068 (quoting *Grable*, 545 U.S. at 313).

Finally, finding federal jurisdiction in this case would disrupt the balance between state and federal regulation of the natural gas markets established by the NGA.  *See Gunn*, 133 S. Ct. at 1065.  "[T]he Natural Gas Act 'was drawn with meticulous regard for the continued exercise of state power, not to handicap or dilute it in any way.'"  *Oneok*, 135 S. Ct. at 1599 (quoting *Panhandle E. Pipe Line Co. v. Pub. Serv. Comm'n*, 332 U.S. 507, 517–18 (1947)).  Finding federal jurisdiction in this state law action against a producer would interfere with the congressionally approved right of Louisiana to regulate production according to its own laws and in its own courts.

### b.  *Exclusive Federal Jurisdiction*

Enable also argues that the NGA's grant of exclusive federal jurisdiction over "actions at law brought to enforce any liability or duty created by, or to

enjoin any violation of, this chapter or any rule, regulation, or order thereunder" requires that its claims be brought in federal court. *See* 15 U.S.C. § 717u. Enable alleges that by withdrawing and possessing the storage gas, Nadel is interfering with Enable's own rights and obligations under the NGA. Enable admits that the NGA does not provide it with a private cause of action, but it insists that Nadel's withdrawal and resale of gas from West Unionville is exclusively a matter of federal law.

We do not agree. The NGA's federal exclusivity clause does not create federal jurisdiction in this case because Nadel's conduct is not a violation of the NGA even if it interferes with Enable's rights and obligations under the NGA. It is an issue of first impression for this court whether the NGA's exclusive jurisdiction provision extends to actions involving third party interference, but other circuits that have addressed the issue have held that it does not. For instance in *Williston*, the Ninth Circuit held that because the well operator was not subject to any duties under the NGA it could not violate the NGA and be subject to the exclusive jurisdiction clause. 524 F.3d at 1102. The Sixth Circuit, in resolving a dispute between a regulated gas company and the non-regulated owners of land across which the gas company held an easement, similarly concluded that "[i]f the [defendants] do not have a statutory duty, then they cannot have violated the Natural Gas Act." *Columbia Gas Transmission, LLC v. Singh*, 707 F.3d 583, 588 (6th Cir. 2013). Since Nadel does not have any duties under the NGA or its related regulations, resolution of Enable's state law claims will not require us "to determine whether the defendants [have] complied with rules that [have] the effect and force of federal law." *Williston*, 524 F.3d at 1102.[5]

---

[5] Enable points to a district court case out of Oregon to support its claim of exclusive federal jurisdiction. *Pacificorp v. Nw. Pipeline GP*, No. CV. 10–99–PK, 2010 WL 3199950 (D. Or. June 23, 2010). However, *Pacificorp* is inapplicable because in that case the plaintiff's

No. 16-30269

We therefore join our sister circuits and decline to extend the federal exclusivity provision of the NGA to cover claims of interference with duties under the NGA against defendants who have no statutory duties of their own under the Act.

*2. Motion to Disqualify*

Having concluded that this court lacks subject matter jurisdiction to hear the underlying suit, we deny as moot Enable's motion to disqualify Nadel's counsel.

### III. CONCLUSION

We AFFIRM the district court's dismissal of Enable's claims for lack of subject matter jurisdiction.  We DENY as moot Enable's motion to disqualify Nadel's counsel.

---

state law claims were based on the defendant's violation of its own federal tariff, not solely on the plaintiff's tariff.  *Id.* at \*4.  In contrast, Nadel is not subject to a tariff or other regulation under the NGA.