# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

December 3, 2014

Lyle W. Cayce
Clerk

No. 14-40326

In re:  In the Matter of the Complaint of RLB CONTRACTING, INCORPORATED, as Owner of the Dredge "Jonathan King Boyd" and its Engine, Tackle, and Gear for Exoneration or Limitation of Liability,

------------------------------

RLB CONTRACTING, INCORPORATED, as Owner of the Dredge "Jonathan King Boyd" and its Engine, Tackle, and Gear for Exoneration or Limitation of Liability,

> Petitioner - Appellant

v.

MARK BUTLER, Individually and as Heir to the Estate of Sammi Butler; JOSEPH SIGLE, Individually and on behalf of BS, a minor child; LINDA BUTLER,

> Claimants - Appellees

Appeal from the United States District Court
for the Southern District of Texas

Before DAVIS and HAYNES, Circuit Judges.[*]

PER CURIAM:

---

[*] This opinion is being entered by a quorum of this Court pursuant to 28 U.S.C. § 46.

Petitioner-Appellant RLB Contracting, Inc. ("RLB") filed this action under the Limitation of Liability Act ("Limitation Act" or "Act"), 46 U.S.C. § 30501 *et seq.*, seeking to limit its liability to $750,000, the value of the dredge vessel, "Jonathan King Boyd" (the "Vessel"), after a fatal allision between a fishing boat and the Vessel's dredge pipe.  Claimants-Appellees Mark Butler, Joseph Sigle, and Linda Butler (collectively, "the Butlers"), occupants or representatives of occupants of the fishing boat, had previously sued RLB in Texas state court for personal injuries and property damage, and for the wrongful death of one occupant, Butler's twelve-year-old daughter Sammi ("S.B.").  In response to RLB's limitation action, the Butlers contended that RLB had missed the Limitation Act's six-month jurisdictional deadline for invoking the protections of the Act.[1]  After examining a series of letters exchanged between counsel for the parties, the district court agreed that, more than six months before RLB filed the limitation action, it had received written notice of a potential claim which had a "reasonable possibility" of exceeding the value of the dredge.  The court therefore granted the Butlers' motion for summary judgment and dismissed RLB's action as time-barred.  Reviewing the district court's ruling *de novo*, we affirm.

## I.    FACTS AND PROCEEDINGS

### A.    Fishing boat accident

On July 1, 2011, the Vessel was engaged in dredging operations near Anahuac in Chambers County, Texas.  A fishing boat carrying Mark Butler, his son Joseph Sigle, Sigle's son B.S., and Butler's daughter S.B., collided with a floating dredge pipe associated with the Vessel.  All occupants of the fishing

---

[1] *See* 46 U.S.C. § 30511(a) (2013) ("The owner of a vessel may bring a civil action in a district court of the United States for limitation of liability under this chapter.  The action must be brought within 6 months after a claimant gives the owner written notice of a claim.").

boat were thrown overboard, suffering various physical injuries, and S.B. was killed. The Butlers contend that the dredge pipe was inadequately marked and that RLB had negligently failed to post warnings of ongoing dredging operations. The Coast Guard initiated an investigation shortly after the accident.

## B.     Legal proceedings

Mark Butler filed suit against RLB in Texas state court on June 14, 2012, and RLB was served with the state court petition on July 2.[2] RLB filed its limitation of liability action in federal district court on December 28, 2012, seeking to limit its liability to the $750,000 value of the Vessel.

The Butlers filed a motion to dismiss the limitation action as untimely, contending that RLB had received written notice of the claim more than six months prior to the time it filed the limitation action. According to the Butlers, their counsel had sent RLB's counsel numerous emails between July 26, 2011, and June 14, 2012, each of which addressed the Butlers' pending claim.

The case was referred to a magistrate judge who issued a Report and Recommendation ("R&R") which concluded that, on the basis of those emails, RLB had received the required notice and thus missed the six-month window for filing a limitation action. The district court, after converting the Butlers' motion to dismiss to a motion for summary judgment, adopted the R&R, granted summary judgment to the Butlers, and dismissed the limitation action as time-barred.

## C.     Pre-suit correspondence

At the heart of this dispute is a series of letters, mostly exchanged via email, between RLB's two lawyers, Andrew Schulz and Wayne Pickering, and

---

[2] Sigle joined the suit on October 24, 2012, on his own behalf and as next friend of B.S., and Linda Butler, S.B.'s mother, joined the suit as an additional plaintiff on December 12, 2012.

No. 14-40326

Butler's counsel, Frank Daniel.  On July 26, 2011, a few weeks after the accident, Daniel sent Schulz a letter via fax, informing him that Daniel had been retained by the Butlers.[3]  He asked Schulz for "any information [he] or [RLB] may have regarding the cause of the accident, in addition to all witnesses and interested parties."  He also made an overture toward settlement, informing Schulz that Daniel "would welcome the opportunity to discuss with [Schulz] [his] thoughts moving forward."  Finally, Daniel wrote that "[t]his letter will also serve as notice to your client to preserve all evidence as listed in the attached notice."  An attachment to the letter, titled "Notice to RLB Contracting, Inc.," gave Schulz and RLB "notice not to destroy, conceal or alter any paper or electronic files or other data."  The attachment further noted that "failure to comply with this notice can result in severe sanctions being imposed by the Court {and liability in tort} for spoliation of evidence or potential evidence."  Daniel advised that he expected to obtain this evidence "[t]hrough discovery."

Schulz responded to Daniel the same day via email.  In it, he stated that because "the investigation [was] ongoing, . . . any substantive information w[ould] remain part of [his firm's] work product until the investigation [was] complete."  These references to "the investigation" meant the Coast Guard investigation of the accident.

On August 19, 2011, Daniel sent Schulz an email stating that "it might behoove [them] to seriously consider mediation before any lawsuit."  Daniel expressly based this recommendation on information that he had gathered about "the nature of the injuries, bystander claims, graphic photos, [and] the PTSD claims" of his clients and other witnesses, as well as from a meeting with

---

[3] Schulz represents all claimants except Linda Butler, who is represented by Darwin Seidel.

Linda Butler's attorney. Daniel referenced the additional pain that his clients would have to endure "if [they] are forced to litigate and go through depositions."

On August 24, 2011, Schulz wrote to Daniel, rejecting his proposal to mediate and noting that "any attempt to evaluate the case would be futile" until the Coast Guard investigation was complete. Daniel wrote back the next day, reiterating that mediation was their "best option" as "investigations will only tell us so much." Schulz responded: "Okay. But I cannot imagine a carrier just throwing out your number of $3M, without more, just to your clients." He added that they could "keep the dialogue going." There was another exchange of emails on October 28, primarily dealing with preservation of the fishing boat for any future litigation.

The record reflects no correspondence for the next seven months. Then, on May 30, 2012, Daniel sent one last mediation offer to Schulz, noting that, as the Coast Guard investigator had released his report, Daniel "wanted to check with [Schulz] one last time about pre-suit mediation." Schulz replied that he would check with Pickering and the "carrier" (presumably, RLB's insurance carrier). Later that day, Daniel wrote to Schulz requesting an RLB safety manual and a witness's name in preparation for any possible mediation. He also advised Schulz that he would be taking a statement from a boater who had allided with the dredge pipe on the same day as had his client. Finally, Daniel's email addressed possible state and federal venues for the lawsuit.

On June 8, 2012, Schulz received an email from Daniel that he had been instructed to file suit.[4] On June 14, Daniel wrote to Schulz and Pickering,

---

[4] The Butlers claim that RLB can be presumed to have received service on June 22, as a notice of suit to RLB from the Chambers County clerk's office appears to state a mailing date of June 19. According to the Butlers, in Texas state court, service is complete as of mailing and may be presumed after "the three day grace period" in Federal Rule of Civil Procedure 6(d). This reasoning is unconvincing. The Butlers conflate *service* under the state

No. 14-40326

advising them that the lawsuit would be heard "in the 253rd with Judge Cain" and indicating that he would send a "courtesy copy of the file-stamped petition." (There is no evidence in the record that Daniel actually sent the petition before RLB was served on July 2, 2012.)

## II.   ANALYSIS

### A.   Standard of Review

A party who contends that a limitation action was not timely filed challenges the district court's subject matter jurisdiction.[5] We review *de novo* dismissals under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction.[6] On issues involving jurisdiction, the district court may consider evidence outside the pleadings and resolve factual disputes.[7] We review purely factual findings for clear error and mixed questions of law and fact *de novo*.[8] RLB, as the party asserting jurisdiction, has the burden of proof.[9]

Both parties relied on evidence outside the pleadings, so the district court converted Butler's motion to dismiss into a motion for summary judgment under Federal Rule of Civil Procedure 12(d). We review summary

---

and federal rules of civil procedure with *notice* under the Limitation Act. They cite no case holding that presumptive notice, rather than actual notice, is sufficient under that Act. More importantly, the Butlers did not press this theory before the district court, and therefore may raise it for the first time on appeal. *See Kinash v. Callahan*, 129 F.3d 736, 739 n.10 (5th Cir. 1997) ("As a general rule, this Court does not review issues that are raised for the first time upon appeal.").

[5] *In re Eckstein Marine Serv. L.L.C.*, 672 F.3d 310, 315 (5th Cir. 2012).

[6] *See id.* at 314.

[7] *See Freeman v. United States*, 556 F.3d 326, 334 (5th Cir. 2009); *see also Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981) ("[N]o presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.").

[8] *In re Eckstein*, 672 F.3d at 314; *Complaint of Tom-Mac, Inc.*, 76 F.3d 678, 682 (5th Cir. 1996).

[9] *See In re Eckstein*, 672 F.3d at 314.

judgment rulings *de novo*, viewing evidence in the light most favorable to the nonmoving party.[10]   Summary judgment is warranted when there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law.[11]

We have made the general observation that Rule 12(b)(1) and Rule 56 diverge in their treatment of factual disputes.  In this case, however, neither the magistrate judge in the R&R, nor the district court in adopting it, made any relevant factual findings.  Furthermore, a review of the record reveals no material factual disputes.  Thus, the Rule 12(b)(1) and Rule 56 standards converge, and a straightforward *de novo* review applies.

## B.    Limitation of Liability Act

The Limitation Act "allows a vessel owner to limit liability for damage or injury . . . to the value of the vessel or the owner's interest in the vessel."[12]  To invoke the protections of the Act, the vessel owner must bring an action in district court "within 6 months after a claimant gives the owner written notice of a claim."[13]  This requirement is jurisdictional.[14]

We have said that a communication qualifies as "written notice" if it "reveals a 'reasonable possibility' that the claim will exceed the value of the vessel."[15]   This standard evokes two inquiries: (1) whether the writing

---

[10] *See Flock v. Scripto-Tokai Corp.*, 319 F.3d 231, 236 (5th Cir. 2003).

[11] *Id.*

[12] *Lewis v. Lewis & Clark Marine, Inc.*, 531 U.S. 438, 446 (2001).  A limitation action essentially establishes a limited fund equal to the value of the vessel and consolidates all potential claims before one federal district court.  *See id.* at 448.

[13] 46 U.S.C. § 30511(a) (2013).  This provision was previously codified at 46 U.S.C. app. § 185.

[14] *In re Eckstein*, 672 F.3d at 315.

[15] *Id.* at 317.  RLB relies on the multifactor test from *Matter of Loyd W. Richardson Const. Co.*, 850 F. Supp. 555, 557 (S.D. Tex. 1993).  However, we have consistently used the "reasonable possibility" test, and continue to do so here.  *See In re Eckstein*, 672 F.3d at 317; *Billiot v. Dolphin Servs., Inc.*, 225 F.3d 515, 518 (5th Cir. 2000); *Complaint of Tom-Mac, Inc.*, 76 F.3d 678, 683 (5th Cir. 1996).

No. 14-40326

communicates the *reasonable possibility* of a claim, and (2) whether it communicates the *reasonable possibility* of damages in excess of the vessel's value. Answering these questions requires a "fact-intensive inquiry into the circumstances of the case."[16]

The purpose of the "reasonable possibility" standard is to place the burden of investigating potential claims on the vessel owner:

> The Limitation Act provides generous statutory protection to the vessel owners who reap all of its benefits. When there is uncertainty as to whether a claim will exceed the vessel's value, the reasonable possibility standard places the risk and the burdens associated with that risk on the owner. In other words, if "doubt exists as to the total amount of the claims or as to whether they will exceed the value of the ship the owner will not be excused from satisfying the statutory time bar since he may institute a limitation proceeding even when the total amount claimed is uncertain."[17]

Assigning the risk of uncertainty to the vessel owner fits the purpose of the six-month limitation, which is "to require the shipowner to act promptly to gain the benefit of the statutory right to limit liability."[18] Thus, "[o]nce a reasonable possibility has been raised, it becomes the vessel owner's responsibility to initiate a prompt investigation and determine whether to file a limitation action."[19] We emphasize that the standard is a reasonable *possibility*, not a reasonable *probability*. Although this standard "is not toothless, it is also not particularly stringent."[20]

We have said less about what a communication must contain to qualify as such a written notice under the Act. A state court complaint clearly gives

---

[16] *In re Eckstein*, 672 F.3d at 317.

[17] *Id.* at 317–18 (quoting *Complaint of Morania Barge No. 190, Inc.*, 690 F.2d 32, 34 (2d Cir. 1982)).

[18] *Exxon Shipping Co. v. Cailleteau*, 869 F.2d 843, 846 (5th Cir. 1989).

[19] *In re Eckstein*, 672 F.3d at 317.

[20] *Id.*

notice of the claim itself. A demand need not express a specific quantum of damages so long as there is a reasonable possibility that a claim's value will exceed the value of the vessel.[21] This court has not, however, addressed what is required for a written communication that is *not* a filed complaint to qualify as notice.

## C.     **Written Notice**

As a threshold matter, to the extent that we have never explicitly held that a written communication may serve as notice under the Act in lieu of a filed complaint, we do so today.[22] In this case, that presents three issues: (1) whether a series of letters, none of which constitutes notice on its own, may be considered together to find notice in the aggregate, (2) whether Daniel's letters convey a "reasonable possibility" of a potential claim, and (3) whether those letters establish a "reasonable possibility" that the amount of the claim might exceed the value of the Vessel.

### 1.     *Aggregate Notice*

The Butlers urge us to consider counsel Daniel's letters "bundled together" and to evaluate the entire body of correspondence under the Act's "written notice" requirement. The statutory text does not foreclose the

---

[21] *See id.* at 317–19 ("[A] claimant need not prove or even specifically allege that his damages will exceed the value of the vessel in order to trigger the six month deadline. So long as the reasonable possibility standard has been met by the claimant's allegations, the vessel owner bears the risk even if the total value of the claim is uncertain." *Id.* at 319.). Thus, although a claimant who affirmatively demands a lower amount does not trigger the six-month period until he later amends his complaint to demand a higher figure, a vessel owner who has reason to know of "*other* claims . . . arising out of the same occurrence [that] may exceed the value of his ship" is still on notice from the start. *Id.* at 319 (emphasis added) (quoting *Exxon Shipping*, 869 F.2d at 846); *see also, e.g.*, *Complaint of Morania Barge*, 690 F.2d at 34–35.

[22] *See In re Marquette Transp. Co., L.L.C.*, 524 F. App'x 989, 992–93 (5th Cir. 2013) (per curiam) (unpublished); *see also Complaint of Beesley's Point Sea-Doo, Inc.*, 956 F. Supp. 538, 540 (D.N.J. 1997)) ("It is well settled that letters sent by claimants to vessel owners may, in some circumstances, constitute notice sufficient to trigger the six-month rule under the Act.").

possibility of aggregate notice; it only requires the claimant to give "the owner written notice," not *a* written notice.[23]  In fact, some district courts, including one in this circuit, have considered a body of correspondence rather than each of its individual constituent parts in a vacuum.[24]

Moreover, from a practical standpoint, it makes sense to do so.  In situations like this one, in which the vessel owner and the putative claimant corresponded over time, it is natural for individual letters to focus narrowly on specific subjects and for later letters to assume knowledge of the contents of previous letters.  Considering the correspondence as a whole better approximates what the vessel owner, as the recipient of *all* of the writings, should have thought was a "reasonable possibility" of a potential claim and its value.

Furthermore, it would be an artificial exercise to require a claimant who did engage in a lengthy correspondence to designate the single most favorable writing from the series as *the* written notice.  Far better for the record to reflect what actually occurred and for the district court to make its ruling accordingly.  Thus, we shall consider whether the entire series of letters satisfies the "reasonable possibility" requirement.

### 2.     *"Reasonable Possibility" of Potential Claim*

We have not previously addressed the issue of what a writing must contain to give a vessel owner notice of a potential claim.  Both RLB and the Butlers analogized to district court cases (primarily from courts outside this circuit) and emerge with two different methodologies for analyzing the facts at hand.  RLB starts with an idea of what proper notice of a claim would look like and searches through Daniel's emails for statements matching that standard.

---

[23] 46 U.S.C. § 30511(a) (2013).

[24] *See Complaint of Beesley's*, 956 F. Supp. at 541; *Matter of Oceanic Fleet, Inc.*, 807 F. Supp. 1261, 1263 (E.D. La. 1992).

RLB states that notice must "refer to the cause of [claimants'] injuries or the types of injuries sustained . . . and clearly assert blame on the petitioner." RLB also tries to disqualify Daniel's emails for "provid[ing] no details regarding the claims, injuries, or causes of injuries" and for not mentioning any "demand of a right, specific blame for damage, or call upon something due." RLB asserts that, even though Daniel's emails might have obliquely referred to a potential lawsuit, absent the magic words it sought, RLB "was never put on notice that [the Butlers] would be seeking a claim based on RLB's alleged negligence in connection with the vessel." RLB also claims that it had serious doubts as to the viability of the potential claim because of Butler's alleged contributory negligence. The Butlers point out that RLB cannot simultaneously disclaim knowledge of a pending claim and assert knowledge of a potential defense to that claim. Furthermore, the issue here is the "reasonable possibility" that a claim *exists*, not probability of success on the merits.[25]

In contrast, the Butlers' approach is to start with the letters themselves, then consider whether together those letters reveal the reasonable possibility of a pending claim. Daniel's first letter instructed RLB "to preserve evidence as if a suit had been initiated"; his email of August 19, 2011, mentioned the evidence he had already gathered and requested mediation "before any lawsuit"; his email on May 30 of the following year discussed state and federal venues for the suit and again requested mediation; finally, his emails of June 8 and 14, 2012, explicitly bring up filing the lawsuit and service of process. According to the Butlers, these statements, when taken together, paint a picture of a pending claim.

---

[25] *Cf. In re Hawaiian Watersports, LLC*, No. 07-00617, 2008 WL 3065381, at *5 (D. Haw. Feb. 29, 2008) ("Plaintiff would not be excused from being on notice if it believed it had some other compelling defense to the claim, such as no negligence on its part." (citations omitted)).

No. 14-40326

The Butlers' approach is more compatible with the reasonable-possibility test's fact-intensive nature, as it starts with the actual facts rather than a predefined factual pattern. This finds support from the Second Circuit, which does not require "exacting specificity in a notice of claim to a vessel owner."[26] Rather, that court uses "a broad and flexible standard of review—reading letters of notice in their entirety and considering their 'whole tenor'—when determining if sufficient notice was given."[27]

In its favor, RLB's position does invoke the benefits of a bright-line rule: A clear list of required statements and demands would provide guidance to future claimants and vessel owners alike. In addition to being less fact-focused, however, there are two additional problems with this approach. First, regarding damages, we have held that the risk of uncertainty lies with the vessel owner. It would be inconsistent to reverse that risk when it comes to notice of a potential claim. Second, mandating that written notice contain "magic words" or specific elements might well impose a requirement not found in the statutory text.

As the Butlers' analytical approach appears to be more compatible with our precedent, and as it is factually inconceivable that RLB had no notice of a claim after almost a year of emails discussing the case—culminating in the June 14 missive informing RLB that Butler had actually filed suit—we hold that by June 14, 2012, at the latest, RLB had notice of the Butlers' claim. This is obviously more than six months prior to the December 28, 2012, filing date of RLB's limitation action.

---

[26] *Doxsee Sea Clam Co. v. Brown*, 13 F.3d 550, 554 (2d Cir. 1994).

[27] *Id.*

12

### 3.    *"Reasonable Possibility" of Damages in Excess of Vessel's Value*

To the same extent that RLB had notice of the Butlers' potential wrongful death suit, it had notice that there was a reasonable possibility of damages in excess of $750,000, even though Daniel's emails never gave a specific number. Our recent decision in *In re Eckstein Marine Service L.L.C.* addressed almost precisely this same issue.[28] In that case, the state court plaintiff alleged permanent and disabling injuries, but did not provide a specific damages figure. We rejected the vessel owner's contention that, without a dollar amount or certainty as to the extent and permanence of the plaintiff's injuries, the period for filing a limitation action could not start.[29] We concluded that, in light of the severity of the injuries, a vessel owner should have realized the potential for damages in excess of its vessel's value (coincidentally, also $750,000), and that any uncertainty was the owner's burden to resolve.[30] That is the reason for a six-month grace period. The analogy to this case is clear.[31]

The $3 million figure and dispute surrounding it are red herrings. RLB attacks the district court's conclusion that RLB "certainly knew" of the $3 million value of the claim, and seeks to rely on the fact that this settlement offer never appeared in *Daniel*'s letters, only in Schulz's rejection. However, RLB has no reply to the district court's primary reasoning: RLB should have

---

[28] 672 F.3d 310 (5th Cir. 2012).

[29] *Id.* at 317.

[30] *Id.* at 317–18; *see also Paradise Divers, Inc. v. Upmal*, 402 F.3d 1087, 1091 (11th Cir. 2005); *Doxsee*, 13 F.3d at 554–55.

[31] We note further that in *In re Eckstein*, the vessel owner had actually done some legal research to find that juries typically awarded about $335,000 for injuries similar to those suffered by the state court plaintiff, demonstrably less than the boat's value of $750,000. We still did not excuse the untimely filing of the limitation action, however, stating that "[w]hile this finding might have made it less *probable* that [the state court plaintiff's] claim would exceed $750,000, in light of the other evidence available to [the vessel owner] it did not make the *possibility* of such an award unreasonable." *In re Eckstein*, 672 F.3d at 318 (emphases added).

realized that an action involving the death of a child would easily exceed $750,000 in potential damages.  We are satisfied that more than six months prior to filing its limitation action, RLB had notice of a potential claim the value of which had the reasonable possibility of exceeding the value of its vessel.

## III.  CONCLUSION

The Butlers have established that the pre-suit writings from their counsel to RLB's counsel conveyed the reasonable possibility that RLB faced a claim exceeding $750,000, the value of the Vessel.  RLB thus had written notice under the Limitation Act earlier than six months before it filed its limitation action.  The district court's dismissal of RLB's complaint as time-barred is AFFIRMED.