# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

January 16, 2026

Lyle W. Cayce
Clerk

———————

No. 25-30205

———————

In re In the Matter of Genesis Marine, LLC, as Owner and Operator of the M/V Anaconda and Barges GM 1006 and GM 5040, Petitioning for Exoneration from or Limitation of Liability

Genesis Marine, L.L.C., *as owner and operator of the M/V Anaconda and barges GM 1006 and GM 5040*,

*Petitioner—Appellant*,

*versus*

Brandon Darrow,

*Claimant—Appellee*.

———————————————————

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:24-CV-2881

———————————————————

Before Smith, Stewart, and Haynes, *Circuit Judges*.

Carl E. Stewart, *Circuit Judge*:

Brandon Darrow was formerly employed as a tankerman on the towing vessel M/V Anaconda, which is owned by Genesis Marine, LLC ("Genesis"). After injuring his back on the job, Darrow filed a tort lawsuit

No. 25-30205

against Genesis in Louisiana state court in December 2021. He alleged that his injuries were caused by Genesis's negligence and unseaworthy vessel and sought damages. Three years later, on December 13, 2024, Genesis filed a limitation lawsuit in federal court seeking to limit its tort liability to the value of the vessel. Darrow filed an opposed motion for summary judgment, arguing that Genesis's limitation lawsuit was untimely under 46 U.S.C. § 30529(a) because it was filed more than six months after Genesis had received written notice that there was a reasonable possibility that Darrow's damages could exceed the value of the vessel. The district court granted the motion, holding that the lawsuit was untimely. Thereafter, Genesis appealed. For the following reasons, we AFFIRM the district court's judgment.

**I**

*A. Factual Background*

Darrow was a tankerman who worked aboard Genesis's towing vessel, the M/V Anaconda. Genesis owns and operates the M/V Anaconda and two barges (collectively, the "Vessel"), which are collectively valued at $12.5 million. On December 23, 2020, Darrow injured his back while attempting to throw mooring lines to secure the barges when docking in Mt. Airy, Louisiana. On the same day, Genesis's Port Captain emailed other Genesis executives, reporting that Darrow was "experiencing muscular discomfort along the left posterior of his body, ranging from his left shoulder to the back of his left knee."

After his injury, Darrow met with orthopedic spine surgeon Dr. Michael Patterson and neurosurgeon Dr. Donald Dietze. In January 2021, Dr. Patterson examined Darrow and concluded that he had a "massive disk herniation" that caused "severe central canal stenosis." Following Dr. Patterson's recommendation, Darrow had spinal cord surgeries in January and March 2021. In June 2021, Dr. Dietze evaluated Darrow and reported

that his average pain at the time was a nine out of a scale of ten, and that he was experiencing "[w]eakness in both legs[] when rising up from a sitting position [and] when walking a distance," among other issues.

In June 2021, Darrow's counsel sent Genesis a letter of representation. They also sent Genesis Darrow's updated medical records from Dr. Dietze and asked Genesis to pay for a lumbar fusion surgery that Dr. Dietze had ordered. In response, Genesis's counsel requested that Darrow wait to undergo surgery or invasive treatment until it had time to conduct an independent medical examination to preserve the medical evidence in the case. In October 2021, orthopedic surgeon Dr. Andrew Todd conducted Genesis's independent medical examination, opining that Darrow would need to undergo another surgery, that "a fusion surgery [was] in order," and that he did not believe that Darrow was capable of working. Darrow eventually had surgery in October 2021.

*B. Procedural History*

On December 23, 2021, Darrow filed a tort lawsuit against Genesis in Louisiana state court. He alleged that Genesis's negligence and the Vessel's unseaworthiness caused him to sustain "serious, painful injuries to his back, spine and other parts of his body and psychological, mental, and/or emotional injuries." In his petition, Darrow sought compensatory, special, and general damages. The petition also alleged that Darrow was "rendered unfit for duty and presently remain[ed] unfit and incapable of returning to duty as a seaman" due to his injuries. In August 2022, Genesis filed its answer. Genesis denied Darrow's allegations and asserted the following affirmative defense:

> **Genesis avers** that plaintiff's injuries and damages, if any, occurred without the privity or knowledge of Genesis; **that the amount of damages sued for in the Petition herein greatly**

No. 25-30205

**exceeds the amount or value of Genesis's interests in the M/V ANACONDA, and her freight then pending, if any**; and, Genesis accordingly invokes the benefits of the provisions of the Revised Statutes of the United States of America and the acts amendatory thereof and supplemental thereto in limitation of the liability of shipowners, under which provisions plaintiff is not entitled to recover damages in a sum in excess of the amount or value of Genesis's interest in said M/V ANACONDA at the conclusion of the voyage on which plaintiff allegedly sustained injuries, if any, and her freight then pending, even if Genesis be held liable for or by reason of the matters, or any of them, set forth in the Petition herein, which liability is specifically denied.

Discovery then proceeded in state court. In January 2023, Darrow submitted his answers to Genesis's interrogatories, which included statements that he was claiming damages for "either future loss of earnings due to impaired earning ability, or future medical expenses." He also answered that he had not worked since his injury. In April 2023, Genesis's expert Dr. Todd opined that Darrow would have "some ongoing issues with back and leg symptoms due to the nerve damage that he sustained from his work injury and side effects of his ongoing treatments." In July 2023, Genesis sent Darrow's counsel a physician's request and questionnaire as part of Darrow's application for an accommodation under the Americans with Disabilities Act. In August 2023, Dr. Dietze completed the request and questionnaire, answering that he did not expect Darrow to return to work, and that Darrow was not likely to recover sufficiently to return to work due to his failed back syndrome.[1]

In January 2024, Darrow served his first set of expert reports on

---

[1] In February 2024, Darrow had additional procedures and asked Genesis to pay for them.

4

No. 25-30205

Genesis in state court. Darrow produced a vocational report, which concluded that "[w]ith multiple surgeries and [the] need for [spinal cord simulator] implantation, he is no longer capable of returning to maritime work." He also produced an economic damages report, which estimated his future life care expenses as $1,964,676.00 and total future damages for loss of earnings, fringe benefits, offshore meals, and life care as $3,506,800.00. In August 2024, Darrow submitted a supplemental vocational report, which opined that "[g]iven the complexity of his injury due to depression and multiple surgeries, Dr. Dietze confirmed [that] [Darrow] is totally and permanently disabled and unable to return to work in any capacity," and that Darrow "has been permanently precluded from returning to the workforce." Following the production of these expert reports, Darrow's counsel sent Genesis a settlement demand for $20,175,328.50.[2]

On December 13, 2024, Genesis filed a limitation lawsuit in the Eastern District of Louisiana.[3] Genesis alleged that its complaint was timely because it was filed "within six months from the date [it] received first written notice of a limitable claim because in August 2024, Darrow demanded Genesis pay him $22,000,000." Darrow filed an opposed motion for summary judgment, arguing that Genesis's limitation action was untimely under 46 U.S.C. § 30529(a). The district court granted Darrow's motion for summary judgment because it determined that Genesis had received written notice of the reasonable possibility that Darrow's claim could exceed $12.5

_____

[2] Darrow sought the following damages: (1) $327,558.50 for past cure; (2) $1,934,834.00 for future cure; (3) $3,912,936.00 for past and future lost wages/lost earning capacity/fringe benefits; (4) $12,000,000.00 for general damages (including past, present, and future pain and suffering, mental anguish, and loss of enjoyment of life, and physical disfigurement); and (5) $2,000,000.00 for punitive damages.

[3] When Genesis filed its limitation action, a state court trial was set for March 2025. The federal district court stayed the state court case after Genesis filed its limitation action.

million, or the value of the Vessel, before June 13, 2024 (six months before the limitation action was filed). Genesis timely appealed.

## II

This court has jurisdiction under 28 U.S.C. § 1291 because the district court entered a final judgment when it granted summary judgment in favor of Darrow on March 27, 2025.

We review a district court's ruling on a motion for summary judgment de novo. *Sanders v. Christwood*, 970 F.3d 558, 561 (5th Cir. 2020) (citing *Burell v. Prudential Ins. Co. of Am.*, 820 F.3d 132, 136 (5th Cir. 2016)). "Summary judgment is proper 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Id.* (citing Fed. R. Civ. P. 56(a)). "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Hamilton v. Segue Software Inc.*, 232 F.3d 473, 477 (5th Cir. 2000) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party." *Id.* "A party cannot defeat summary judgment with 'conclusory allegations,' 'unsubstantiated assertions,' or 'only a scintilla of evidence.'" *Lamb v. Ashford Place Apartments L.L.C.*, 914 F.3d 940, 946 (5th Cir. 2019) (quoting *Little v. Liquid Air. Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam)). This court "must view the evidence in the light most favorable to the non-moving party, drawing 'all justifiable inferences . . . in the non-movant's favor.'" *Renwick v. PNK Lake Charles, L.L.C.*, 901 F.3d 605, 611 (5th Cir. 2018) (quoting *Env't Conservation Org. v. City of Dallas*, 529 F.3d 519, 524 (5th Cir. 2008)).

## III

The Limitation of Liability Act "provides vessel owners . . . a means of limiting their vessel's tort liability to the value of the vessel plus pending freight." *In re Bonvillian Marine Serv., Inc.*, 19 F.4th 787, 789 (5th Cir. 2021) ("*Bonvillian*") (citing 46 U.S.C. §§ 30501–30512). Under the Limitation of Liability Act, a vessel owner must "bring a civil action in a district court of the United States for limitation of liability . . . within [six] months after a claimant gives the owner written notice of a claim." 46 U.S.C. § 30529(a). If the limitation action is not filed by the six-month deadline, "it is dismissed as untimely." *In re Eckstein Marine Serv., L.L.C.*, 672 F.3d 310, 314 (5th Cir. 2012) ("*Eckstein*") (footnote omitted), *overruled in part on other grounds by Bonvillian*, 19 F.4th 787.

This court has explained that

> [t]he Limitation Act's six-month timeline does not automatically begin to run when a vessel owner learns a claimant has filed a lawsuit. It is triggered only if and when the written notice reveals a "reasonable possibility" that the claim will exceed the value of the vessel, and therefore that the vessel owner might benefit from the Limitation Act's protection.

*Id.* at 317. To determine whether there is a reasonable possibility that a claim will exceed the value of a shipowner's vessel, courts must conduct a "fact-intensive inquiry into the circumstances of the case." *Id.* (footnote omitted). This standard requires courts to answer two questions: "(1) whether the writing communicates the *reasonable possibility* of a claim, and (2) whether it communicates the *reasonable possibility* of damages in excess of the vessel's value." *In re the Complaint of RLB Contracting, Inc.*, 773 F.3d 596, 602 (5th Cir. 2014) ("*RLB Contracting*") (per curiam), *overruled in part on other grounds by Bonvillian*, 19 F.4th 787. It is the second question that is at issue in this appeal.

No. 25-30205

The purpose of the Limitation of Liability Act is "to require that a shipowner, in order to gain the benefit of his statutory right to limit his liability, act promptly." *Complaint of Morania Barge No. 190, Inc.*, 690 F.2d 32, 33 (2d Cir. 1982) ("*Morania Barge*"). This court has observed that "[o]nce a reasonable possibility has been raised, it becomes the vessel owner's responsibility to initiate a prompt investigation and determine whether to file a limitation action." *Eckstein*, 672 F.3d at 317 (footnote omitted). Moreover, "[w]hen there is uncertainty as to whether a claim will exceed the vessel's value, the reasonable possibility standard places the risk and the burdens associated with that risk on the owner." *Id.* at 318. As the Second Circuit has observed, when doubt exists, "the owner will not be excused from satisfying the statutory time bar since he may institute a limitation proceeding even when the total amount claimed is uncertain." *Morania Barge*, 690 F.2d at 34 (citations omitted).

## IV

On appeal, Genesis argues that the district court erred in granting Darrow's motion for summary judgment for four main reasons. First, it asserts that the district court treated 46 U.S.C. § 30529(a) as a strict, jurisdictional rule rather than a claim-processing rule, contrary to this court's holding in *Bonvillian*. Second, it contends that there is a genuine dispute of material fact regarding when it received written notice that Darrow's claim had a reasonable possibility of exceeding the value of the Vessel. Third, it maintains that the district court improperly credited Darrow's evidence and construed it in his favor. And fourth, it presses that the district court erroneously relied on the affirmative defense that Genesis asserted in Darrow's state court lawsuit as evidence. We address each of these arguments in turn.

No. 25-30205

*A.* Bonvillian

Genesis argues that the six-month deadline in 46 U.S.C. § 30529(a) is a claim-processing rule rather than a jurisdictional rule following this court's decision in *Bonvillian*. It contends that by granting Darrow's motion for summary judgment, the district court "creat[ed] a pseudo-jurisdictional, hard-and-fast rule that will once again cause vessel owners to preemptively file for limitation within [six] months of every incident." Darrow responds that the district court's decision is consistent with *Bonvillian*, and that "[n]othing in *Bonvillian* suggests that a statutory, non-jurisdictional deadline may be disregarded."

*Bonvillian* does not affect the analysis in this case. At the time *Bonvillian* was presented to this court for review, the rule in this circuit for limitation actions was set by *Eckstein*. Under that rule, "a party alleging a limitation petition was not timely filed challenges the district court's subject matter jurisdiction over that petition." *Eckstein*, 672 F.3d at 315. In *Bonvillian*, a crew boat owner argued that the vessel owner's limitation action was untimely, so the district court lacked subject matter jurisdiction under the rule announced in *Eckstein*. 19 F.4th at 789. This court overturned that rule as contradictory to the Supreme Court's decision in *United States v. Kwai Fun Wong*, 575 U.S. 402 (2015). *Id.* at 790. In *Kwai Fun Wong*, "the Court noted, 'even when [a] time limit is important (most are) and even when it is framed in mandatory terms (again, most are),' it should—absent a clear statement by Congress—be deemed nonjurisdictional." *Id.* at 791 (quoting *Kwai Fun Wong*, 575 U.S. at 410). Thus, in *Bonvillian*, this court ultimately held that "the time limitation set forth in 46 U.S.C. § 30511(a) is a mere claim-processing rule which has no bearing on a district court's subject matter jurisdiction." *Id.* at 794.

While Genesis is correct that 46 U.S.C. § 30511(a) is now a claim-processing rule rather than a jurisdictional rule under *Bonvillian*, nothing in *Bonvillian* suggests that the district court erred in this case. As this court recently had the opportunity to explain, "just because a rule is 'nonjurisdictional' does not necessarily mean it is not mandatory or that a court may otherwise close its eyes and 'ignore' a timely objection." *Liao v. Bondi*, No. 25-60427, 2025 WL 3654054, at *2 (5th Cir. Dec. 17, 2025) (quoting *Gonzalez v. Thaler*, 565 U.S. 134, 146 (2012)). Therefore, *Bonvillian* does not permit a district court to disregard the deadline under 46 U.S.C. § 30511(a), and the district court did not err in this case.

### B. Summary Judgment Arguments

#### i. Genuine Dispute of Material Fact

As discussed *supra*, "[s]ummary judgment is proper 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Sanders*, 970 F.3d at 561 (citing Fed. R. Civ. P. 56(a)).

Genesis argues that there is a genuine dispute of material fact regarding when it received written notice of a reasonable possibility that Darrow's claim could exceed the value of the Vessel.[4] However, *when* Genesis received sufficient written notice that triggered its six-month deadline for filing a limitation action is a disputed legal conclusion, not a disputed fact. Here, the district court correctly determined that there were no genuine disputes of material fact because Genesis admitted to the material facts.[5] The

---

[4] Genesis only argues that there is a genuine dispute of material fact in the alternative.

[5] Genesis admitted to many of the facts listed in Darrow's statement of uncontested facts in support of his motion for summary judgment. While these admissions are not the same as admissions in response to requests for admissions or responses to

No. 25-30205

facts support the district court's determination that Genesis was aware more than six months before it filed its limitation lawsuit.

As discussed *supra*, a vessel owner must bring a limitation action within six months after a claimant gives the owner written notice that a claim has a reasonable possibility of exceeding the value of the vessel. 46 U.S.C. § 30529(a); *Eckstein*, 672 F.3d at 315–17. Genesis filed its limitation action on December 13, 2024. Therefore, we evaluate whether there is sufficient evidence in the record to show that Genesis should have known before June 13, 2024 that Darrow's damages posed a reasonable possibility of exceeding the value of the Vessel.

The record shows that Genesis was aware of the severity of Darrow's back injury as early as December 23, 2020, the day he was injured. By August 2021, Genesis knew that Darrow had been evaluated by Dr. Dietze for "ongoing pain bilaterally to the lateral hip, groin, knee, right thigh, lower leg, ankle, and foot and due to foot drop causing him to fall and numbness causing him to urinate on himself," and that Dr. Dietze recommended a lumbar fusion. Genesis knew that its own expert Dr. Todd approved the lumbar fusion in October 2021.

Genesis was also aware of a reasonable possibility of a claim exceeding the value of the Vessel when Darrow filed his state court petition on December 23, 2021. In his petition, Darrow stated that he was seeking compensatory, special, and general damages for the "serious, painful injuries to his back, spine and other parts of his body and psychological, mental, and/or emotional injuries." He also alleged that he was "rendered unfit for duty and presently remain[ed] unfit and incapable of returning to duty as a

---

interrogatories, they are still persuasive and help the parties narrow down the factual disputes before the court, if any.

11

seaman" due to his injuries. In August 2022, Genesis filed its answer to Darrow's petition, acknowledging that Darrow was suing it for damages that "greatly exceed[ed] the amount or value of Genesis's interests" in the Vessel.[6]

Evidence provided to Genesis after Darrow filed his state court lawsuit also supports the district court's determination that Genesis should have known before June 13, 2024 that there was a reasonable possibility that Darrow's damages could exceed the value of the Vessel. By January 2023, Genesis had access to "Darrow's medical records and videos of his severe foot drop syndrome and inability to walk." In April 2023, Genesis's expert Dr. Todd opined that Darrow would have "some ongoing issues with back and leg symptoms due to the nerve damage that he sustained from his work injury and side effects of his ongoing treatments." In August 2023, Dr. Dietze noted that Darrow could not return to work due to his "failed back syndrome." And Genesis was asked to approve and pay the fees for Darrow's spinal cord surgeries before he had them in September 2023 and February 2024.

Additionally, Darrow produced an economic damages report in January 2024, which estimated his total future damages for loss of earnings, fringe benefits, offshore meals, and life care alone as $3,506,800.00. This estimate did not account for the other categories of damages Darrow sought in his state court petition, including damages for "past, present, and future physical, mental, and emotional pain and suffering," "past, present, and future disability," "past and future loss of found," and "past, present, and future loss of enjoyment of life." Based on these estimates and the record

---

[6] The district court's consideration of the content of that answer is considered *infra* Part IV.B.iii.

evidence discussed *supra*, Genesis should have known well before June 13, 2024 that there was a reasonable *possibility* that Darrow's claim could exceed $12.5 million. *See Eckstein*, 672 F.3d at 317 ("While this standard is not toothless, it is also not particularly stringent.").

In sum, the district court did not err in granting summary judgment in Darrow's favor because there are no genuine disputes of material fact.

### ii. Construction of the Evidence

As discussed *supra*, this court "must view the evidence in the light most favorable to the non-moving party, drawing 'all justifiable inferences . . . in the non-movant's favor.'" *Renwick*, 901 F.3d at 611 (quoting *Env't Conservation Org.*, 529 F.3d at 524).

Genesis argues that the district court credited Darrow's evidence over its evidence and drew inferences in Darrow's favor in contravention of the summary judgment standard. It agrees with Darrow that it had written notice of a reasonable possibility of a claim when Darrow filed his state court lawsuit. However, it contends that "there was no evidence demonstrating a '*reasonable possibility*' that Darrow's claim could exceed the value of [the Vessel] until Darrow served his supplemental expert reports and made his $20 million settlement demand in August 2024." It maintains that the reasonable possibility that a claim could exceed the value of a vessel "becomes far more remote—as in this case—where objective evidence and allegations indicated a routine back injury to a low-wage employee, and the [Vessel] [is] worth $12.5 million." Darrow responds that the district court neither credited his evidence over Genesis's evidence nor ignored evidence about his wage claim because it considered the aggregate of the information.

The district court properly construed the evidence in granting Darrow's motion for summary judgment. Genesis's argument that it could not have known that Darrow's claim could exceed $12.5 million until Darrow

served his supplemental expert reports and made a settlement demand for $20 million fails based on this court's reasoning in *Eckstein*, which the district court cited in granting summary judgment. There, this court determined that the claimant's state court complaint established a reasonable possibility that his claim might exceed the value of the boat. 672 F.3d at 317. It reasoned that the claimant had alleged that the appellant was liable for his injuries on the boat due to negligence, that he was seeking lifetime economic and non-economic damages, and that he suffered permanent and catastrophic injuries. *Id.*

Like the claimant in *Eckstein*, Darrow was injured while working with mooring lines, filed a state court petition stating that he sustained painful injuries, did not limit his damages to a specific amount, and listed the types of damages he sought, which included lifetime economic and non-economic damages. Like Genesis, the appellant in *Eckstein* argued that "the complaint never indicated a dollar amount sought, and that it was filed before the full extent and permanence of [the claimant's] injuries were definitively known." 672 F.3d 310 at 317. This court rejected this argument, first reasoning that such an argument

> fails to recognize that the claimant need *only* raise a "reasonable possibility" that the damages sought will exceed the value of the vessel. While this standard is not toothless, it is also not particularly stringent. Once a reasonable possibility has been raised, it becomes the vessel owner's responsibility to initiate a prompt investigation and determine whether to file a limitation action.

*Id.* (footnote omitted). This court also rejected the appellant's argument because the claimant "was under no obligation to specify an amount claimed in his initial state court complaint, and never asserted that the damages he sought were less than $750,000." *Id.* at 319. Similarly, Darrow did not have

an obligation to specify the amount of his damages in his state court petition, and he never stated that the damages he sought in his petition would be less than $12.5 million.

And like Genesis, the appellant in *Eckstein* researched previous awards for similar injuries to approximate the claimant's potential damages. *Id.* at 318. The appellant in *Eckstein* found that the highest general jury verdict for injuries like the claimant's injuries in the last decade was $350,000. *Id.* This court observed that "[w]hile this finding might have made it less probable that [the claimant's] claim would exceed $750,000, in light of the other evidence available to [the appellant] it did not make the possibility of such an award unreasonable." *Id.* Following this reasoning, while Genesis found that "no award for a similar back injury in Louisiana had come close to $12.5 million prior to August 2024," this finding also did not make the possibility of such an award unreasonable based on the other evidence in the record. Thus, the factual allegations and damages alleged in Darrow's state court petition were sufficient to put Genesis on notice that there was a reasonable possibility of a claim exceeding $12.5 million, and that previous awards have not exceeded $12.5 million does not change that conclusion.

Furthermore, *RLB Contracting* supports the district court's conclusion, and is not as inapposite as Genesis claims. In *RLB Contracting*, a fishing boat carrying members of the Butler family collided with a floating dredge pipe associated with the appellant's vessel. 773 F.3d at 599. All occupants suffered serious injuries when they were thrown overboard, and a twelve-year-old was killed. *Id.* The Butlers sued the appellant in Texas state court, and the appellant filed a limitation action to limit its liability to $750,000, the value of the vessel. *Id.* The district court granted the Butlers' motion for summary judgment, concluding that the appellant's limitation action was untimely. *Id.* at 600. This court held that a series of letters may constitute aggregate notice, explaining that "[c]onsidering the

correspondence as a whole better approximates what the vessel owner, as the recipient of *all* of the writings, should have thought was a 'reasonable possibility' of a potential claim and its value." *Id.* at 604.

In this case, the district court considered the totality of the evidence in deciding that Genesis should have known before June 13, 2024 that there was a reasonable possibility that Darrow's claim could exceed $12.5 million. The district court considered that Darrow was seeking damages for "past, present, and future loss of wages, fringe benefits, and wage earning capacity," as well as other damages in addition to medical and other evidence. Even if the district court did not specifically or explicitly consider Darrow's wages, the amount of Darrow's wages is not a material fact because it would not change the outcome. *See Hamilton*, 232 F.3d at 477 (quoting *Anderson*, 477 U.S. at 248) ("A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law."). Regardless of the exact amount of Darrow's wages, there is enough other evidence in the record to support the district court's determination that other damages created a reasonable possibility that Darrow's claim could exceed $12.5 million.[7]

In sum, the district court did not err in granting summary judgment in Darrow's favor because it properly construed the evidence.

### iii. Use of Genesis's Affirmative Defense as Evidence

Genesis argues that the district court erroneously relied on the affirmative defense of limitation of liability that it raised in its answer to

---

[7] Genesis also argues that the claimant's injury in *RLB Contracting* was more catastrophic than Darrow's injury. The comparative harm of the two incidents is not necessarily relevant to the analysis. Darrow's injuries were quite painful and debilitating, rendering him unable to work for the rest of his life such that there was a reasonable possibility that the damages he sought in his state court petition could exceed $12.5 million.

Darrow's state court lawsuit. It maintains that its affirmative defense in the state court case was not "a judicial admission that can be used as evidence to support summary judgment in this federal court suit."

Darrow responds that the district court did not err in considering Genesis's affirmative defense. He notes that the district court declined to reach the question of whether Genesis's affirmative defense was a binding judicial admission because it was unnecessary to do so. He also observes that Genesis acknowledged that it raised the affirmative defense, which he listed in his statement of uncontested facts.[8]

The district court did not err by considering the affirmative defense that Genesis asserted in state court as evidence in granting Darrow's motion for summary judgment. As an initial matter, the district court did not consider Genesis's previously-asserted affirmative defense as a judicial admission. At no point did the court consider that defense as binding on Genesis in this matter. Rather, the district court stated that whether Genesis's affirmative defense is a judicial admission "is of no consequence for the purposes of resolving this motion."

While Genesis's affirmative defense was initially included in its answer to Darrow's state court petition, Genesis acknowledged during this litigation that it had previously taken that position. Because the fact that Genesis asserted that affirmative defense in state court proceedings was established for the purpose of summary judgment, that fact was a part of the summary judgment record regardless of whether it was a judicial admission. The district court considered that fact "*coupled with* Genesis's undisputed

_____

[8] In response, Genesis reiterates that "pleadings and boilerplate defense legal theories in one court are not competent evidence that can be given legal weight at summary judgment in another court."

No. 25-30205

knowledge of the serious and developing extent of Darrow's injuries and required care" in deciding that Genesis had sufficient written notice that there was a reasonable possibility that Darrow's claim could exceed the value of the Vessel when it filed its answer. Therefore, Genesis fails to show that the district court impermissibly relied on the information in its affirmative defense.

In sum, the district court did not err in granting summary judgment in Darrow's favor because it properly considered the content of Genesis's affirmative defense in addition to other evidence in the record.

## V

For the foregoing reasons, we AFFIRM the district court's judgment.